UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DONNA LEWIS,

                              Plaintiff,

       -v-                                          3:13-CV-1364

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

LACHMAN, GORTON LAW FIRM                     PETER A. GORTON, ESQ.
Attorneys for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

OFFICE OF REGIONAL GENERAL COUNSEL          AMANDA J. LOCKSHIN, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Donna Lewis ("Lewis" or "plaintiff") brings this action, pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social

Security's ("Commissioner" or "defendant") final decision denying her application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties

have filed their briefs as well as the Administrative Record on Appeal and the motion will be considered on the basis of these submissions without oral argument.[1]

## II.  BACKGROUND

On November 30, 2010, Lewis filed applications for DIB and SSI claiming a period of disability beginning on July 1, 2009.  R. at 115-128.[2]  These applications were initially denied on March 3, 2011.  Id. at 51-56.  At plaintiff's request, a video hearing was held before Administrative Law Judge ("ALJ") Bruce Fein on March 15, 2011.  Id. at 25-45.

On May 31, 2012, the ALJ rendered a written decision concluding that Lewis was not disabled within the meaning of the Social Security Act from July 1, 2009 through the date of his decision.  R. at 9-19.  Plaintiff timely appealed this unfavorable disability determination to the Appeals Council.  Id. at 5.

On September 20, 2013, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Lewis's request for review.  R. at 1-3. Plaintiff filed this action on November 1, 2013, seeking judicial review of the Commissioner's denial of benefits.  Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

## III.  DISCUSSION

### A.  Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were

---

[1]  Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2]  Citations to "R." refer to the Administrative Record.

applied.  <u>Poupore v. Astrue</u>, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Id</u>. (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (citing <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  <u>See id</u>.  Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's.  <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982); <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  <u>Martone v. Apfel</u>, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987)).

## B.  <u>Disability Determination—The Five-Step Evaluation Process</u>

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled.  See 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ m ust determine whether the claimant has engaged in substantial gainful activity.  A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits.  Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities.  Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings").  Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1.  If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled."  Martone,

- 4 -

70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

## C. ALJ's Decision

The ALJ found Lewis had not engaged in substantial gainful activity since July 1, 2009, the alleged onset date. R. at 11. The ALJ next found plaintiff's bipolar disorder and panic disorder with agoraphobia to be severe impairments, but that this combination of

severe impairments did not meet or equal any of the Listings.[3] Id. at 11-13. The ALJ then determined plaintiff retained the RFC to perform a full range of work at all exertional limitations subject to certain non-exertional limitations. Id. at 13. Specifically, the ALJ found:

> [T]he claimant, on a sustained basis, can only understand, remember, and carry out simple instructions and tasks (unskilled work) in a low stress setting defined as occasional decision-making, changes in the work setting, work-related judgments, and interactions with the public, coworkers, and supervisors.

Id. (footnote omitted).

Based on these findings and Lewis's age, education, and work experience, the ALJ determined jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 18-19. Accordingly, the ALJ concluded plaintiff was not disabled within the meaning of the Act. Id. at 19.

## D. Plaintiff's Appeal

On appeal, Lewis argues the ALJ: (1) erred in finding that she suffered from only "mild" difficulties in daily living and social functioning; (2) improperly weighed the medical evidence; (3) reached an unsupportable RFC determination; and (4) failed to elicit the testimony of a Vocational Expert.

## 1. The "Paragraph B" Criteria

Lewis first argues that the ALJ's findings of only "mild restriction" in her activities of daily living and only "mild difficulties" in her social functioning are not supported by substantial evidence. Pl.'s Mem., ECF No. 14, 10-11[4]; see also R. at 12.

---

[3]  The ALJ also found Lewis's morbid obesity and headaches were not severe impairments. R. at 11.

[4]  Pagination corresponds with that assigned by CM/ECF.

As an initial matter, Lewis seems to argue that these particular findings are implicated in the ALJ's ultimate RFC determination. But as the Commissioner correctly points out, these findings were made at, and are relevant to, steps two and three of the five-step disability determination process. Def.'s Mem., ECF No. 15, 7; see also R. at 13 (noting the challenged limitations identified in this section "are not a residual function capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process").

Where, as here, "mental impairments are at issue, the Commissioner directs administrative adjudicators to employ a 'psychiatric review technique' (sometimes referred to as a 'special technique')." Wilson v. Colvin, 2015 WL 1609727, at *4 (N.D.N.Y. Apr. 10, 2015) (Sharpe, C.J.) (adopting Report & Recommendation of Hines, M.J.) (citing 20 C.F.R. §§ 404.1520a(b)(e), 416.920a(b)-(e)).

"This technical method helps administrative law judges first determine whether claimants have medically-determinable mental impairments." Wilson, 2015 WL 1609727, at *4 (footnote omitted). "This technique also enables administrative law judges to determine subsequently whether medically-determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." Id.

As relevant here, ALJs determine whether a claimant's severe mental impairments meet or equal any of the presumptively disabling impairments listed in Appendix 1 of the

Regulations[5] by applying what are commonly referred to as the "paragraph B criteria." Wilson, 2015 WL 1609727, at *5. These criteria are divided into four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The Regulations require ALJs to rate the first three of these functional areas as "[n]one, mild, moderate, marked, [or] extreme," §§ 404.1520a(c)(4), 416.920a(c)(4), while the fourth category (episodes of decompensation) must be rated on a five-point scale. Id.

In Lewis's case, the ALJ considered these paragraph B criteria and concluded plaintiff: (1) suffered from mild restriction in activities of daily living; (2) experienced mild difficulties in social functioning; (3) experienced moderate difficulties in concentration, persistence, or pace; and (4) had suffered no episodes of decompensation of extended duration. R. at 12.

These findings are supported in the ALJ's written decision with a brief narrative discussion and include citations to various pieces of record evidence. With respect to activities of daily living, the ALJ noted that Lewis reported that she lived alone and is able to cook, do laundry, shop, shower herself, dress herself, and bathe daily.[6] See R. at 12 (citing R. at 312-13). With respect to social functioning, the ALJ noted plaintiff was able to socialize with friends and attend church. Id. (citing R. at 313). The ALJ further noted that although the

---

[5] "Impairments listed in Appendix 1 of the Regulations are acknowledged by the [Commissioner] to be of sufficient severity to preclude substantial gainful activity." McGregor v. Astrue, 993 F. Supp. 2d 130, 136 (N.D.N.Y. 2012) (McAvoy, S.J.) (alteration in original) (adopting Report & Recommendation of Bianchini, M.J.). "Accordingly, a claimant who meets or equals a Listing is 'conclusively presumed to be disabled and entitled to benefits.'" Id. (quoting Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995)).

[6] "Activities of daily living 'include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." McGregor, 993 F. Supp. 2d at 138 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(1)).

record reflected that plaintiff isolates herself at times, consultative examiner Mary Ann Moore, Psy. D., readily concluded that plaintiff's "manner of relating socially" was adequate.[7] Id. (citing R. at 313, 318).

Lewis attempts to challenge these findings on appeal by listing several pieces of "significant" evidence in the record that she concludes are "not the symptoms and indicia of someone with only mild difficulties in daily living or social function." Pl.'s Mem. at 11. In other words, plaintiff does not articulate how the challenged findings are the product of legal error or how the ALJ's proffered citations do not constitute substantial evidence, but rather "essentially invite[s] the court to re-weigh evidence and come to a different conclusion than did [the] ALJ." Wilson, 2015 WL 1609727, at *4.

That invitation must be declined, since a reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Indeed, and as noted above, a district court's review of an administrative denial of benefits "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009). Lewis's citations to other pieces of record evidence, without more, are an insufficient basis on which to challenge the ALJ's findings at these early steps. Accordingly, this ground for appeal will be denied.

---

[7] "'Social functioning' refers to the claimant's 'capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals' and includes 'the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers.'" McGregor, 993 F. Supp. 2d at 138 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(2)).

## 2. **State Agency Consultant M. Apacible**

Lewis next argues the ALJ erred in assigning "great weight" to a March 1, 2011 report by M. Apacible, a state agency psychiatric consultant who never actually examined her and reached his conclusions on the basis of an incomplete record. Pl.'s Mem. at 11.

First, insofar as Lewis appears to argue an ALJ lacks discretion to ever afford anything more than limited weight to the opinion of a state agency consultant, she is incorrect. Although this may have once been the case, the current Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims" whose "opinions may constitute substantial evidence in support of residual functional capacity findings." Delgrosso v. Colvin, 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015) (Suddaby, J.) (adopting Report & Recommendation of Hines, M.J.) (rejecting similar "global objection to reliance on nonexamining medical advisers' opinions" by same plaintiffs' counsel).

However, that does not end the inquiry into the propriety of the ALJ's reliance on Dr. Apacible. Lewis also claims that since Dr. Apacible's report was issued in March 2011, it failed to take into account a large degree of relevant medical evidence subsequent to that date. Pl.'s Mem. at 12-13. Importantly, Dr. Apacible's opinion appears to have been rendered before the opinion of plaintiff's long-time mental health care provider and Licensed Clinical Social Worker ("LCSW") Valerie Jones-Giles was made part of the record.[8]

"Great weight should not be accorded to the opinion of a non-examining State agency consultant whose opinion is based on an incomplete record that lacks the opinion of the

---

[8]  LCSW Jones-Giles's medical source statement is dated November 29, 2011. R. at 349-351.

claimant's primary treating psychiatrist." Coleman v. Colvin, 2015 WL 1190089, at *10 (S.D.N.Y. Mar. 16, 2015) (footnote omitted); see also Girolamo v. Colvin, 2014 WL 2207993, at *8 (W.D.N.Y. May 28, 2014).

It is true, as Lewis readily concedes and as the Commissioner is quick to point out, that LCSW Jones-Giles is considered an "other source" under the Regulations and is therefore not entitled to the generous presumption of "controlling weight" ordinarily afforded to a claimant's treating physician. See Caron v. Colvin, 2014 WL 3107959, at *7 (N.D.N.Y. July 8, 2014) (noting "the Commissioner's regulations do not require an ALJ to assign the same presumption of controlling weight to these ancillary treatment providers"), aff'd, 600 F. App'x 43 (2d Cir. 2015) (summary order). However, given that Dr. Apacible's opinion was rendered early in the disability review process on the basis of an incomplete record that lacked LCSW Jones-Giles's valuable medical opinion, the ALJ's decision to nevertheless assign it "great weight" constitutes error warranting remand.[9]

### 3. **Other Considerations**

Lewis's remaining challenges are predicated on conclusions drawn by the ALJ that will necessarily be impacted by his reconsideration of the relative weight to be assigned to her treating and consulting sources and therefore will not be addressed at this time. However, the ALJ is also specifically directed to revisit at least three other aspects of his written decision on remand.

First, the ALJ should clarify his findings with respect to the February 2011 evaluation

---

[9] Notably, the ALJ never explicitly assigned *any* amount of weight to LCSW Jones-Giles's opinions. Although social workers are not considered "acceptable medical sources," their opinions should nevertheless be considered in evaluating a claimant's impairments. Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (Mordue, C.J.).

completed by Mary Ann Moore, Psy. D.  The ALJ afforded "some weight" to this opinion, partially discounting it on the basis of her allegedly faulty conclusion that "the claimant's treatment notes appear to show that the claimant's condition is more stable than Dr. Moore appears to believe."  R. at 16.

Of course, "[t]here is no requirement that an administrative law judge blindly accept [the] opinion of a consultative examiner concerning a claimant's limitations when substantial evidence supports a decision to give less weight to such opinion."  Griffin v. Colvin, 2014 WL 296854, at *7 (N.D.N.Y. Jan. 27, 2014) (Sharpe, C.J.) (adopting Report & Recommendation of Hines, M.J.).

Nevertheless, the appropriate amount of weight to be afforded to medical opinion evidence is properly determined by applying the same general criteria to each one:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) evidence supporting the opinion; (4) consistency with the record as a whole; (5) the source's specialization in the area of treatment; and (6) other significant factors.  20 C.F.R. §§ 404.1527(c), 416.927(c).

Presumably, the ALJ's statement about Dr. Moore's February 2011 opinion was a permissible reference to an inconsistency between Dr. Moore's conclusions and other substantial evidence in the record.  Read otherwise, it might be viewed as an impermissible attempt by the ALJ to substitute his medical opinion for that of Dr. Moore's.  Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.").

Second, the ALJ discounted the March 2012 opinion of Dr. Moore "because it appears based somewhat on the claimant's alleged symptoms." R. at 17. But "a patient's complaints or reports of his or her history are 'an essential diagnostic tool.'" McGregor, 993 F. Supp. 2d at 139. This finding should therefore be clarified, since it could be fairly read as indicative of the ALJ impermissibly discrediting Dr. Moore's opinion on the basis of only his lay judgment that the medical report reflected resulting from her consultative examination improperly considered some, or all, of Lewis's complaints to be credible.[10]

Finally, and on the subject of credibility, the ALJ is also directed to clarify his evaluation of Lewis's subjective complaints. "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96-CV-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

Where the record evidence does not support a claimant's testimony, the ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. See 20 C.F.R. § 404.1529; SSR 96-7p. First, the ALJ must determine whether, based on the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96-7p.

---

[10] The ALJ's other proffered basis on which to discredit Dr. Moore's March 2012 opinion is apparently based on the fact that treatment records dated approximately two weeks prior to Dr. Moore's evaluation "show that the claimant's condition had been relatively stable." R. at 18. Although a bipolar claimant is not insulated from scrutiny, it is worth noting that "a person suffering from bipolar disorder may be vulnerable to 'violent mood swings' resulting in 'better days and worse days,' and that a claimant's stability on *some* days does not necessarily support the conclusion that he is able to work *every day*." Matta v. Astrue, 508 F. App'x 53, 57 (2d Cir. 2013) (summary order).

Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. See id.

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(I)-(vii); SSR 96-7p.

Importantly, an ALJ "must discuss the relationship between the plaintiff's medically determinable impairment, the plaintiff's reported symptoms, his conclusions regarding the plaintiff's functioning, and why the plaintiff's reported symptoms are or are not consistent with the evidence in the record." Deeley v. Astrue, 2011 WL 454505, at *5 (N.D.N.Y. Feb. 3, 2011) (Scullin, S.J.) (citing SSR 95-5p).

Here, the entirety of the ALJ's discussion of Lewis's credibility in his written decision stated that:

> [a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. at 14.

Of course, "reviewing courts do not demand perfect decisions, and '[w]hile this sort of boilerplate is inadequate, by itself, to support a credibility finding, . . . its use[ ] does not make a credibility determination invalid.'" Crofoot v. Comm'r of Soc. Sec., 2013 WL 5493550, at *11 (N.D.N.Y. Sept. 30, 2013) (Sharpe, C.J.) (adopting Report & Recommendation of Hines, M.J.) (condemning this boilerplate language as "gobbledygook" that "is, at best, gibberish insusceptible to meaningful judicial review").

Rather, "[t]he determinative question is not whether [the] ALJ [ ] used meaningless and opaque language when expressing his credibility choice, but whether he explained how [the claimant's] subjective testimony is not supported or undermined by other evidence, and whether the ultimate credibility finding is supported by substantial evidence." Crofoot, 2013 WL 5493550, at *11.

Even so, that question must be answered in the negative here. A careful review of the ALJ's written decision reveals no further explicit discussion on this topic or any kind of detailed narrative of the sort ordinarily contemplated by the Regulations, which suggests that "the ALJ 'made a determination with respect to plaintiff's overall RFC and then used that RFC to discount plaintiff's non-conforming allegations and resulting limitations.'" Barnwell v. Colvin, 2014 WL 4678259, at *14 (S.D.N.Y. Sept. 19, 2014) (quoting Norman v. Astrue, 912 F. Supp. 2d 33, 86 (S.D.N.Y. 2012)). Because the Regulations require an ALJ to detail specific reasons supporting his determination of a plaintiff's credibility, his mere recitation of the language of the Regulations frustrates meaningful review.

## IV. CONCLUSION

The deficiencies in the ALJ's written decision leave a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards.

Therefore, it is

ORDERED that

1. Lewis's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's motion for judgment on the pleadings is DENIED;

3. The Commissioner's decision is VACATED; and

4. This matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion.

The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 21, 2015
        Utica, New York.